## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| AMTAX HOLDINGS 204, LLC, | ) | |
| AMTAX HOLDINGS 265, LLC, | ) | |
| AMTAX HOLDINGS 205, LLC, | ) | |
| AMTAX HOLDINGS 206, LLC, | ) | |
| TCH II PLEDGE POOL, LLC, and | ) | |
| TAX CREDIT HOLDINGS III, LLC, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **CASE NO: 1:15-cv-723** |
| | ) | |
| SCOTT I. CANEL, AMBERLY, LLC, | ) | |
| ASHWOOD, LLC, EASTPOINTE I, LLC | ) | |
| KETTERING, LLC, and TEN SOUTH | ) | **JURY DEMANDED** |
| MANAGEMENT COMPANY, LLC, | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM TO PLAINTIFFS' COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES

Defendants, Scott I. Canel, Amberly, LLC, Ashwood, LLC, Eastpointe I, LLC, Kettering, LLC, and Ten South Management Company, LLC, ("Defendants"), for their Answer to the Complaint for Declaratory Judgment of Plaintiffs, AMTAX Holdings 204, LLC, AMTAX Holdings 265, LLC AMTAX Holdings 205, LLC, AMTAX Holdings 206, LLC, TCH II Pledge Pool, LLC, and Tax Credit Holdings III, LLC, ("Plaintiffs"), state as follows:

### INTRODUCTORY STATEMENT

1.      The defendants are the General Partners of a number of limited partnerships that own and operate multi-family affordable housing complexes in the State of Ohio. These limited partnerships include Amberly Square Apartments, L.P., Ashwood Apartments, L.P., Eastpointe Apartments, L.P., and Kettering Square Apartments, L.P. (collectively, the "Partnerships"). The defendants' misappropriation of Partnership funds and purposeful breaches of their fiduciary

duties, not to mention the partnership agreements governing the Partnerships, has led to this Complaint.

**Answer**:　　　　Defendants admit that Amberly, LLC is the General Partner of Amberly Square Apartments, L.P.; that Ashwood, LLC is the General Partner of Ashwood Apartments, L.P.; that Eastpointe I, LLC is the General Partner of Eastpointe Apartments, L.P.; and that Kettering, LLC is the General Partner of Kettering Square Apartments, L.P. Defendants deny the remaining allegations of Paragraph 1.

　　　　2.　　　　The relevant parties to this dispute are:

- The Canel Entities – the General Partners of the Partnerships;

- Ten South Management Company LLC ("Ten South") – the Management Agent of the Partnerships;

- Scott Canel – the Manager and Authorized Representative of both the Canel Entities and Ten South;

- The AMTAX Entities – the Investor Limited Partners of the Partnerships; and

- The TCH Entities – the Special Limited Partners of the Partnerships.

**Answer**:　　　　Paragraph 2 does not contain any factual allegations that Defendants can either admit or deny.

　　　　3.　　　　As the Investor Limited Partners, the AMTAX Entities make significant capital contributions to the Partnerships and own 99.99% of the interests of the Partnerships. As the General Partners, the Canel Entities make a nominal capital contribution and have a less than .01% ownership interest in the Partnerships (typically .0099%). The Canel Entities' primary role is to develop the projects and manage the affairs of the Partnerships, which includes running the daily operations of the apartment complexes owned by the Partnerships; and, in exchange for these duties, they receive specific fees provided for by the agreements of limited partnership governing

the Partnerships. Here, the Canel Entities retained Ten South, an affiliate company managed by Mr. Canel, to serve as the management agent of the Partnerships.

**Answer**:        Defendants admit that Plaintiffs are limited partners in several partnerships and that Amberly, LLC, Ashwood, LLC, Eastpointe I, LLC, and Kettering, LLC are general partners in certain partnerships. Defendants admit that these four General Partners long ago retained Ten South Management Company, LLC, which is affiliated with Canel, to manage the properties they control. Further answering, Defendants state that the rights and responsibilities of the partners are set forth in the limited partnership agreements, as amended, the terms of which agreements are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith. Defendants deny the remaining allegations of Paragraph 3.

        4.        Earlier this year, partnership audits revealed that the Canel Entities – with the complicity and assistance of their affiliate manager – had been and/or were making loans and advances to Mr. Canel's family trust and paying themselves and the manager additional fees and amounts to which they were not entitled under the partnership agreements, including various management, bookkeeping, and agency compliance-related fees known as TRACS fees. The collection of such fees is expressly prohibited by the partnership agreements as well as the management agreements between parties. But, the defendants were treating the partnerships as their own personal piggy banks, and they did so knowingly to the detriment of the AMTAX Entities. The defendants' misappropriation of Partnership monies resulted in reduced cash flow for the Partnerships and, consequently, deficient and/or lost distributions and fees for the AMTAX Entities.

**Answer**:        Defendants deny the allegations of Paragraph 4.

5.     Upon learning of these improper payments, in March of 2015, and in accordance with the partnership agreements, the AMTAX Entities notified the Canel Entities of these and other defaults under the partnership agreements and, even though not required to do so under the partnership agreements, allowed the Canel Entities a reasonable time to cure the defaults. The Canel Entities did not, giving the AMTAX Entities grounds for removing the Canel Entities and their affiliate manager.

**Answer**:     Defendants deny the allegations of Paragraph 5.

6.     The Canel Entities eventually – although untimely – paid some amounts due to the AMTAX Entities and Special Limited Partners of the Partnerships. But, then, they resumed the improper payments, and they have since continued to take money from the partnerships at their whim.

**Answer**:     Defendants deny the allegations of Paragraph 6.

7.     In May 2015, as permitted by the partnership agreements, the AMTAX Entities also notified the Canel Entities of additional defaults in connection with certain of the partnerships and instructed the Canel Entities to remove and replace their affiliate as the management agent of the Partnerships. The AMTAX Entities further warned the Canel Entities to cease and desist from continuing to take unauthorized and improper payments from the Partnerships for themselves and their manager, failure of which would result in the termination of Ten South as the management agent for all of the Partnerships. All of these instructions went unanswered.

**Answer**:     Defendants admit that an entity known as HCP Pacific Management, LLC, holding itself out as the representative of the Plaintiffs, wrote a letter to Canel dated May 15, 2015. Further answering, Defendants state that the letter itself is the best evidence of its content, and Defendants

deny any allegations inconsistent therewith. Defendants deny the remaining allegations of Paragraph 7.

8.      To this day, despite repeated requests and notifications from the AMTAX Entities, the Canel Entities have failed to cure the prior defaults, and they and Scott Canel continue to improperly take and/or pay out Partnership monies to the detriment of the AMTAX Entities. In fact, the defendants have expressly refused to cure their prior defaults or to stop their misappropriation of Partnership assets, and they have likewise refused to remove and replace Ten South as the Partnerships' Management Agent, ensuring continued complicity in their improper taking and use of Partnership monies.

**Answer**:      Defendants deny the allegations of Paragraph 8.

9.      Moving forward, the Canel Entities have stated that they and their manager will continue to make loans and advances to Mr. Canel's family trust and pay themselves the additional management, bookkeeping, and TRACS fees prohibited by the agreements between the parties, regardless of their breach of their contractual and fiduciary duties to the AMTAX Entities. As such, at this point, removal of the defendants as the General Partners and their manager is the only reasonable option for the AMTAX Entities.

**Answer**:      Defendants deny the allegations of Paragraph 9.

10.      As a further consequence of the defendants' misconduct, the Partnerships have also suffered damages, and the Partnerships undoubtedly have claims against the Canel Entities. The claims belonging to the Partnerships have not been brought in this Complaint, and the AMTAX Entities are not seeking relief belonging to or on behalf of the Partnerships.

**Answer**: Defendants deny the allegations of the first sentence of Paragraph 10. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of the second sentence of Paragraph 10, and therefore Defendants deny those allegations.

## I.   THE PARTIES

11. The AMTAX Entities are limited liability companies. Their members are citizens of California, Colorado, Delaware, Massachusetts, New York, Tennessee, and Washington. None of the members of the AMTAX Entities are citizens of Illinois.

**Answer**: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 11, and therefore Defendants deny those allegations.

12. The TCH Entities are limited liability companies. Their members are citizens of California, Colorado, Massachusetts, and Tennessee. None of the members of the TCH Entities are citizens of Illinois.

**Answer**: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 12, and therefore Defendants deny those allegations.

13. Defendant, Scott I. Canel, is a citizen of Illinois. Mr. Canel is the manager and a member of the Canel Entities. He is also the manager of Ten South.

**Answer**: Defendants admit that Canel is an Illinois citizen. Defendants admit that Canel controls the entities that are the Managers of the Defendant General Partners and of Defendant Ten South.

14. Defendants, the Canel Entities, are limited liability companies. Upon information and belief, their members are citizens of Illinois.

**Answer**: Defendants admit that each of the Defendant General Partners and Ten South are limited liability companies and their members are Illinois citizens.

15. Defendant, Ten South, is a limited liability company. Upon information and belief, its members are citizens of Illinois.

**Answer**: Defendants admit the allegations of Paragraph 15.

16. As the plaintiffs are not citizens of Illinois, and the defendants are citizens of Illinois, diversity of citizenship exists. 28 U.S.C. § 1332(a)(1).

**Answer**: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 16, and therefore Defendants deny those allegations.

## II. JURISDICTION

17. The plaintiffs seek a declaratory judgment regarding the Canel Entities' breaches of the agreements governing the partnerships and the AMTAX Entities' right to remove the Canel Entities as the General Partners of the Partnerships for their failure to cure their defaults, as well as damages arising from the Canel Entities' breaches of the partnership agreements and breach of their fiduciary duties as General Partners of the Partnerships. The defendants' misappropriations and breaches have resulted in damage to the viability of the plaintiff's investments in the Partnerships and the projects owned by the Partnerships, including both the capital already invested by the plaintiffs and their residual interests in the projects. The AMTAX Entities' investments alone far exceed $75,000 for each Partnership.

**Answer**: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 17 concerning what it is Plaintiffs seek, and therefore Defendants deny those allegations. Defendants deny the remaining allegations of Paragraph 17.

18. This Court has jurisdiction over each of these claims pursuant to 28 U.S.C. § 1332, as the amount in controversy far exceeds $75,000 (both in its entirety and in connection with each partnership), exclusive of interest and costs, and is between citizens of different states.

**Answer**:        Admitted, upon information and belief.

## III.    VENUE

19.    Pursuant to the agreements of limited partnership governing the Partnerships, the

parties consented and agreed to the jurisdiction and venue of this Court.

**Answer**:        Admitted.

## IV.    FACTUAL BACKGROUND

*A.    The Partnerships and the Rights and Obligations of the Partners*

20.    The Partnerships were created for the purpose of developing, owning, and operating

affordable, multi-family housing complexes. The Partnerships are governed by partnership

agreements that are in all relevant respects identical:

- Amberly Square Apartments L.P. is governed by its amended and Restated Agreement of Limited Partnership, dated effective as of September 1, 2002, as amended by its First Amendment, dated September 1, 2002, its Second Amendment, dated September 1, 2002, and its Third Amendment, dated March 29, 2011;

- Ashwood Apartments L.P. is governed by its Amended and Restated Agreement of Limited Partnership, dated effective as of December 19, 2002, as amended by its First amendment, dated December 19, 2002, and its Second amendment, dated March 29, 2011;

- Eastpointe Apartments L.P. is governed by its Amended and Restated Agreement of Limited Partnership, dated effective as of December 19, 2002, as amended by its First Amendment, dated May 2006, and its Second Amendment, dated August 3, 2012; and

- Kettering Square Apartments L.P. is governed by its Amended and Restated Agreement of Limited Partnership, dated effective as of September 1, 2002, as amended by its First amendment, dated September 1, 2002, its Second Amendment, dated September 1, 2002, and its Third Amendment, dated March 29, 2011.

These agreements are collectively referred to as the "Partnership Agreements," and they spell out

the rights and obligations of the partners of the Partnerships.

**Answer**:      Defendants admit the existence of the Amended and Restated Agreements of Limited Partnership, as amended. Further answering, Defendants state that those agreements are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith.  Defendants deny the remaining allegations of Paragraph 20.

21.     Amendments to the Partnership Agreements must be in writing. A partner cannot waive a breach of the Partnership Agreements by inaction, nor can course of conduct among the partners amend the Partnership Agreements.

**Answer**:      Defendants admit the existence of the Amended and Restated Agreements of Limited Partnership, as amended. Further answering, Defendants state that those agreements are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith. Defendants deny the remaining allegations of Paragraph 21.

22.     Pursuant to the Partnership Agreements, the AMTAX Entities, in their capacity as Investor Limited Partners, made significant capital contributions to the partnerships and own and control approximately 99.99% of the interests in the Partnerships. Pursuant to the Partnership Agreements, the AMTAX Entities are entitled to receive certain federal affordable housing tax credits allocated to the Partnerships, as well as various fees, repayments of advances, and distributions of cash flow from the Partnerships.

**Answer**:      Defendants admit the existence of the Amended and Restated Agreements of Limited Partnership, as amended. Further answering, Defendants state that those agreements are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith. Defendants admit that Plaintiffs or their predecessors made capital contributions and received tax credits, fees and distributions according to the terms of the Partnership Agreements. Defendants deny the remaining allegations of Paragraph 22.

23.     As the Investor Limited Partners, the AMTAX Entities also enjoy certain rights under the partnership Agreements related to the Partnerships, including the right to remove the General Partner upon the occurrence of certain events.

**Answer**:     Defendants admit the existence of the Amended and Restated Agreements of Limited Partnership, as amended. Further answering, Defendants state that those agreements are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith. Defendants deny the remaining allegations of Paragraph 23.

24.     As the Special Limited Partners, the TCH Entities made nominal capital contributions to the Partnerships but enjoy certain rights under the Partnership Agreements and are entitled to receive certain fees, repayments of advances, and distributions of cash flow from the Partnerships.

**Answer**:     Defendants admit the existence of the Amended and Restated Agreements of Limited Partnership, as amended. Further answering, Defendants state that those agreements are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith.  Defendants deny the remaining allegations of Paragraph 24.

25.     As the General Partner of the Partnerships, the Canel Entities made only nominal capital contributions to the Partnerships. However, pursuant to the Partnership Agreements, they assumed certain duties in the day-to-day management and operation of the Partnerships in exchange for a specified ownership interest in the Partnerships and certain, specified fees. They also assumed a fiduciary duty to the AMTAX Entities and the TCH Entities.

**Answer**:     Defendants admit the existence of the Amended and Restated Agreements of Limited Partnership, as amended. Further answering, Defendants state that those agreements are

themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith. Defendants admit that the General Partners made contributions to the partnerships and undertook their responsibilities as General Partners. Defendants deny the remaining allegations of Paragraph 25.

B.   _Specific Rights and Obligation of the General Partners_

26.   The "Rights, Powers and Duties of the Managing General Partners," including the General Partner's fiduciary obligations, are set forth in Article VII of the Partnership Agreements and are incorporated herein as if set forth in their entirety. In addition, Article XI sets forth the General Partner's rights and obligations with respect to the designation of a third-party Management Agent. Finally, restrictions on the authority of the General Partner are set forth in Article VII, Sections 7.1 and 7.10.

**Answer**:     Defendants admit the existence of the Amended and Restated Agreements of Limited Partnership, as amended. Further answering, Defendants state that those agreements are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith.  Defendants deny the remaining allegations of Paragraph 26.

27.   Among those enumerated duties is the General Partner's fiduciary obligation to manage the day-to-day operations of the partnership and use its "best efforts to carry out the purposes, business and objectives of the Partnership" as an entity formed for the purpose of developing, owning, and operating an affordable, multi-family housing complex. This includes, among other things, ensuring that the Partnership maintains required debt coverage ratios, the project maintains required occupancy levels, and the Management Agent of the Partnership performs its job satisfactorily.

**Answer**:     Defendants admit the existence of the Amended and Restated Agreements of Limited Partnership, as amended. Further answering, Defendants state that those agreements are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith.  Defendants deny the remaining allegations of Paragraph 27.

28.     As to the Management Agent, Article XI(A) of the Partnership Agreement requires the General Partner to remove the Management Agent upon the occurrence of certain events, including without limitation, where the Management Agent has demonstrated repeated incompetence or malfeasance in managing the project. The Management Agent must also be removed where it is an affiliate of the General Partner and the General Partner is removed.

**Answer**:     Defendants admit the existence of the Amended and Restated Agreements of Limited Partnership, as amended. Further answering, Defendants state that those agreements are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith.  Defendants deny the remaining allegations of Paragraph 28.

29.     For their performance of their duties, the General Partner and Management Agent are entitled to certain fees specified in the Partnerships Agreements, in the case of the General Partner as permitted by the financial health and subject to available cash flow of the Partnerships.

**Answer**:     Defendants admit the existence of the Amended and Restated Agreements of Limited Partnership, as amended. Further answering, Defendants state that those agreements are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith.  Defendants deny the remaining allegations of Paragraph 29.

30.     But, pursuant to Section 7.10(E), "[n]either the Managing General Partner nor any of [its] Affiliates shall be entitled to any other compensation, fees or profits from the Partnership in connection with the acquisition, construction, development or rent-up of the Land of

Improvements or for the administration of the Partnership's business or otherwise" except as specifically set forth in the Partnership Agreement.

**Answer**:        Defendants admit the existence of the Amended and Restated Agreements of Limited Partnership, as amended. Further answering, Defendants state that those agreements are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith.  Defendants deny the remaining allegations of Paragraph 30.

31.        Relevant also to this case, pursuant to Section 7.1(B)(vi), the General Partner is prohibited from causing the Partnership "to make any loan or advance to any Person," including the General Partner and affiliates of the General Partner.

**Answer**:        Defendants admit the existence of the Amended and Restated Agreements of Limited Partnership, as amended. Further answering, Defendants state that those agreements are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith.  Defendants deny the remaining allegations of Paragraph 31.

32.        Pursuant to Article VII, Section 7.4 (F) and (G) of the Partnership Agreements, the General Partner has a fiduciary duty to the Limited Partners and a "fiduciary responsibility for the safekeeping and use of all funds and assets of the Partnership, whether or not in their immediate possession or control." Among other things, the General partner "shall not employ, or permit another to employ, such funds or assets in any manner except for the exclusive benefit of the Partnership."

**Answer**:        Defendants admit the existence of the Amended and Restated Agreements of Limited Partnership, as amended. Further answering, Defendants state that those agreements are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith.  Defendants deny the remaining allegations of Paragraph 32.

33.     Similarly, pursuant to Section 7.4(A), the General Partner is obligated to "devote to the partnership business such time and effort as may be necessary" to carry out its duties and responsibilities, including without limitation, "supervis[ing] the activities of the Management Agent."

**Answer**:     Defendants admit the existence of the Amended and Restated Agreements of Limited Partnership, as amended. Further answering, Defendants state that those agreements are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith.  Defendants deny the remaining allegations of Paragraph 33.

C.     *The Partnerships' Cash Flow*

34.     The management, application, and distribution of Partnership cash flow is prescribed and meticulously set forth in Section 6.2 of the Partnership Agreements. The distribution of cash flow is not subject to discretion, and it is the General Partner's duty to determine, apply and distribute cash flow in strict accordance with Section 6.2. Pursuant to Section 6.2, available cash flow is determined annually; it is not subject to discretionary determinations throughout the year.

**Answer**:     Defendants admit the existence of the Amended and Restated Agreements of Limited Partnership, as amended. Further answering, Defendants state that those agreements are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith. Defendants deny the third sentence of Paragraph 34.  Defendants deny the remaining allegations of Paragraph 34.

35.     The Partnership Agreements prohibit distribution of cash flow outside of the order and categories set forth in the Partnership Agreements.

**Answer**:       Defendants admit the existence of the Amended and Restated Agreements of Limited Partnership, as amended. Further answering, Defendants state that those agreements are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith.  Defendants deny the remaining allegations of Paragraph 35.

> D.    *Certain Rights of the Investor Limited Partners*

36.    "Certain Rights of [the] Investor Limited Partner" are set forth in Article IV, Section 4.5 of the Partnership Agreements. These rights include the right to remove the General Partner upon the occurrence of certain events.

**Answer**:       Defendants admit the existence of the Amended and Restated Agreements of Limited Partnership, as amended. Further answering, Defendants state that those agreements are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith.  Defendants deny the remaining allegations of Paragraph 36.

37.    Pursuant to Article IV, Section 4.5(A)(iv) of the Partnership Agreements, the Investor Limited Partner may, upon written notice, remove the General partner for, among other things, "material misconduct, or failure to exercise any reasonable care with the respect to any material matter in the discharge of its duties and obligations as [General Partner]"; violation of "any material rights, powers, duties, representations, or warranties as set forth in Article VII' or "any material provision of the [the Partnership Agreement]"; and/or failure to maintain the requisite debt coverage for the Partnership or occupancy levels for the project owned and operated by the Partnership.

**Answer**:       Defendants admit the existence of the Amended and Restated Agreements of Limited Partnership, as amended. Further answering, Defendants state that those agreements are

themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith.  Defendants deny the remaining allegations of Paragraph 37.

       E.     *The Canel Entities' Defaults Under the Partnership Agreements*

38.    The Canel Entities' are the General Partners of the Partnerships and, for some time, have been paying themselves and/or their affiliates fees and amounts to which they were not entitled. They have also committed various other defaults under the Partnership Agreements.

**Answer**:      Defendants deny the allegations of Paragraph 38.

       1.     Amberly Square

39.    Amberly Square Apartments L.P. ("Amberly Square") is a limited partnership that owns and operates an affordable, multi-family housing complex located in Columbus, Ohio known as Amberly Square Apartments. Its partners are:

- Amberly LLC – the General Partner;

- AMTAX Holdings 204, LLC – the Investor Limited Partner; and

- TCH II Pledge Pool, LLC – the Special Limited Partner.

All of the partners of Amberly Square are parties to this suit.

**Answer**:      Defendants admit the allegations of Paragraph 39.

40.    Earlier this year, partnership audits revealed that Amberly LLC had collected and/or caused Amberly Square to pay Amberly LLC and its affiliate, Ten South, amounts to which they were not entitled, including accrued partnership management fees totaling $34,278; excess management fees totaling $58,676; and a bank draft liability charged to the Partnership totaling $20,478.

**Answer**:      Defendants deny the allegations of Paragraph 40.

41.     The defendants' misappropriation of such amounts from the Partnership reflects severe mismanagement of the Partnership and the project and has resulted in reduced Partnership cash flow to the detriment of the plaintiffs, and further threatens the viability of the plaintiffs' investments in the Partnership and the project.

**Answer**:     Defendants deny the allegations of Paragraph 41.

42.     By letter dated March 30, 2015, the AMTAX Entities notified Amberly LLC of these defaults under the partnership Agreement and demanded that it cure the defaults. It did not do so. So, by letter dated May 18, 2015, the AMTAX Entities followed up on the uncured defaults, notified Amberly LLC of additional defaults pertaining to project occupancy levels and debt coverage, and instructed Amberly LLC to remove and replace its affiliate as the Partnerships' Management Agent.

**Answer**:     Defendants admit that in a series of letters dated March 30, 2015, and May 18, 2015, HCP Pacific Asset Management, purporting to speak on behalf of the Limited Partners, asserted alleged defaults by the General Partners. Further answering, Defendants state that those letters are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith. Defendants deny the remaining allegations of Paragraph 42.

43.     Although Amberly LLC's defaults warranted its immediate removal as General Partner, the AMTAX Entities gratuitously allowed Amberly LLC a reasonable period of time to cure the enumerated defaults. Even then, Amberly LLC did not fully cure the defaults. Moreover, it continued to collect and/or make improper payments of Partnership monies, and it did not remove its affiliate as the Management Agent.

**Answer**:     Defendants deny the allegations of Paragraph 43.

44.     While Amberly LLC ultimately – but untimely – paid some amounts due to the Limited Partners of the Partnership, it never fully repaid or cured its prior defaults.

**Answer**:     Defendants admit that the Limited Partners received certain payments. Defendants deny the remaining allegations of Paragraph 44.

45.     Among other things, as of July 2015, when the AMTAX Entities most recently reviewed these issues with Mr. Canel, Amberly LLC had paid to itself and/or its affiliate improper amounts and fees totaling over $150,000, including, as of July 2015. $99,218 in improper bookkeeping fees; $32,977 in improper TRACS fees; and $34,278 in accrued partnership management fees to which it was not entitled.

**Answer**:     Defendants deny the allegations of Paragraph 45.

46.     In addition, Amberly, LLC has expressly refused to remove and replace its complicit affiliate, Ten South, as the Management Agent.

**Answer**:     Defendants admit that Amberly, LLC has refused to replace Ten South as the management agent for the property. Defendants deny the remaining allegations of Paragraph 46.

47.     By letter dated October 1, 2015, the AMTAX Entities gratuitously provided Amberly LLC one last opportunity to cure its prior defaults and remove and replace the Management Agent. It did not do so, and, in fact, refused to do so, and expressly advised the Investor Limited Partner that it would continue to take the unauthorized fees and monies from the Partnership.

**Answer**:     Defendants admit that in a series of letters dated October 1, 2015, a lawyer purporting to represent the purported representative of the Limited Partners asserted alleged defaults by the General Partners. Further answering, Defendants state that those letters are

themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith. Defendants deny the remaining allegations of Paragraph 47.

> 2.  Ashwood Apartments

48.    Ashwood Apartments L.P. ("Ashwood Apartments") is a limited partnership that owns and operates an affordable, multi-family housing complex located in Cincinnati, Ohio known as Ashwood Apartments. Its partners are:

- Ashwood LLC – the General Partner;

- AMTAX Holdings 265, LLC – the Investor Limited Partner; and

- TCH II Pledge Pool, LLC – the Special Limited Partner.

All of the partners of Ashwood Apartments are parties to this suit.

**Answer**:    Defendants admit the allegations of Paragraph 48.

49.    Earlier this year, partnership audits revealed that Ashwood LLC had collected and/or caused Ashwood Apartments to pay Ashwood LLC and its affiliate, Ten South, amounts to which they were not entitled, including unpermitted loans to the General Partner and/or its affiliates totaling $67,454; excess management fees totaling $71,858; and a bank draft liability charged to the Partnership totaling $12,095.

**Answer**:    Defendants deny the allegations of Paragraph 49.

50.    The defendants' misappropriation of such amounts from the Partnership reflects severe mismanagement of the Partnership and the project and has resulted in reduced Partnership cash flow to the detriment of the plaintiffs, and further threatens the viability of the plaintiffs' investments in the Partnership and the project.

**Answer**:    Defendants deny the allegations of Paragraph 50.

51.     By letter dated March 30, 2015, the AMTAX Entities notified Ashwood LLC of these defaults under the Partnership Agreement and demanded that it cure the defaults. It did not do so. So, by letter dated May 18, 2015, the AMTAX Entities followed up on the uncured defaults and demanded that Ashwood LLC cease and desist from continuing to take a pay unauthorized fees and monies from the partnership, failure of which would result in a demand for Ten South's immediate removal as the Partnership's Management Agent.

**Answer**:     Defendants admit that in a series of letters dated March 30, 2015, and May 18, 2015, HCP Pacific Asset Management, purporting to speak on behalf of the Limited Partners, asserted alleged defaults by the General Partners. Further answering, Defendants state that those letters are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith. Defendants deny the remaining allegations of Paragraph 51.

52.     While Ashwood LLC ultimately – but untimely – paid some amounts due to the Limited Partners of the Partnership, it never fully repaid or cured its prior defaults. Moreover, it continued to collect and/or make improper payments of Partnership monies, and it did not remove its affiliate as the Management Agent.

**Answer**:     Defendants admit that the Limited Partners received certain payments. Defendants deny the remaining allegations of Paragraph 52.

53.     Among other things, as of July 2015, when the AMTAX Entities most recently reviewed these issues with Mr. Canel, Ashwood LLC had paid to itself and/or its affiliate improper amounts and fees totaling over $350,000, including, as of July 2015. $135,053 in improper bookkeeping fees; $44,188 in improper TRACS fees; and $67,454 in unpermitted loans to the General Partner and/or its affiliates; and $135,000 in other debits of Partnership funds to which it was not entitled.

**Answer**:　　　Defendants deny the allegations of Paragraph 53.

54.　　In addition, Ashwood LLC has expressly refused to remove and replace its complicit affiliate, Ten South, as the Management Agent.

**Answer**:　　　Defendants admit that Ashwood, LLC has refused to replace Ten South as the management agent for the property. Defendants deny the remaining allegations of Paragraph 54.

55.　　By letter dated October 1, 2015, the AMTAX Entities gratuitously provided Ashwood LLC one last opportunity to cure its prior defaults and remove and replace the Management Agent. It did not do so, and, in fact, refused to do so, and expressly advised the Investor Limited Partner that it would continue to take the unauthorized fees and monies from the Partnership.

**Answer**:　　　Defendants admit that in a series of letters dated October 1, 2015, a lawyer purporting to represent the purported representative of the Limited Partners asserted alleged defaults by the General Partners. Further answering, Defendants state that those letters are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith. Defendants deny the remaining allegations of Paragraph 55.

　　　　　3.　　Eastpointe Apartments

56.　　Eastpointe Apartments L.P. ("Eastpointe Apartments") is a limited partnership that owns and operates an affordable, multi-family housing complex located in Northwood, Ohio known as Eastpointe on the Mall. Its partners are:

- Eastpointe I LLC – the General Partner;

- AMTAX Holdings 205, LLC – the Investor Limited Partner; and

- Tax Credit Holdings III, LLC – the Special Limited Partner.

All of the partners of Eastpointe Apartments are parties to this suit.

**Answer**:      Defendants admit the allegations of Paragraph 56.

57.     Earlier this year, partnership audits revealed that Eastpointe I LLC had collected and/or caused Eastpointe Apartments to pay Eastpointe I LLC and its affiliate, Ten South, amounts to which they were not entitled, including $17,734 in accrued partnership management fees and $91,938 in excess management fees.

**Answer**:      Defendants deny the allegations of Paragraph 57.

58.     The defendants' misappropriation of such amounts from the Partnership reflects severe mismanagement of the Partnership and the project and has resulted in reduced Partnership cash flow to the detriment of the plaintiffs, and further threatens the viability of the plaintiffs' investments in the Partnership and the project.

**Answer**:      Defendants deny the allegations of Paragraph 58.

59.     By letter dated March 30, 2015, the AMTAX Entities notified Eastpointe I LLC of these defaults under the Partnership Agreement and demanded that it cure the defaults. It did not do so. So, by letter dated May 18, 2015, the AMTAX Entities followed up on the uncured defaults, notified Eastpointe I LLC of additional defaults pertaining to the project's occupancy levels and debt coverage, and instructed it to remove and replace its affiliate as the Partnerships' Management Agent.

**Answer**:      Defendants admit that in a series of letters dated March 30, 2015, and May 18, 2015, HCP Pacific Asset Management, purporting to speak on behalf of the Limited Partners, asserted alleged defaults by the General Partners. Further answering, Defendants state that those letters are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith. Defendants deny the remaining allegations of Paragraph 59.

60.     Although Eastpointe I LLC's defaults warranted its immediate removal as General Partners, the AMTAX Entities gratuitously allowed Eastpointe I LLC a reasonable period of time to cure the enumerated defaults. Even then, Eastpointe I LLC did not fully cure the defaults. Moreover, it continued to collect and/or make improper payments of Partnership monies, and it did not remove its affiliate as the Management Agent.

**Answer**:     Defendants deny the allegations of Paragraph 60.

61.     While Eastpointe I LLC ultimately – but untimely – paid some amounts due to the Limited Partners of the Partnership, it never fully repaid or cured its prior defaults.

**Answer**:     Defendants admit that the Limited Partners received certain payments. Defendants deny the remaining allegations of Paragraph 61.

62.     Among other things, as of July 2015, when the AMTAX Entities most recently reviewed these issues with Mr. Canel, Eastpointe I LLC had paid to itself and/or its affiliate improper bookkeeping fees totaling, as of July 2015 $187,174.

**Answer**:     Defendants deny the allegations of Paragraph 62.

63.     In addition, Eastpointe I LLC has expressly refused to remove and replace its complicit affiliate, Ten South, as the Management Agent.

**Answer**:     Defendants admit that Eastpointe I, LLC has refused to replace Ten South as the management agent for the property. Defendants deny the remaining allegations of Paragraph 63.

64.     By letter dated October 1, 2015, the AMTAX Entities gratuitously provided Eastpointe I LLC one last opportunity to cure its prior defaults and remove and replace the management Agent. It did not do so, and, in fact, refused to do so, and expressly advised the Investor Limited Partner that it would continue to take the unauthorized fees and monies from the Partnership.

**Answer**: Defendants admit that in a series of letters dated October 1, 2015, a lawyer purporting to represent the purported representative of the Limited Partners asserted alleged defaults by the General Partners. Further answering, Defendants state that those letters are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith. Defendants deny the remaining allegations of Paragraph 64.

> 4. Kettering Square

65. Kettering Square Apartments L.P. ("Kettering Square") is a limited partnership that owns and operates an affordable, multi-family housing complex located near Dayton, Ohio known as Trails of Oak Creek. Its partners are:

- Kettering LLC – the General Partner;

- AMTAX Holdings 206, LLC – the Investor Limited Partner; and

- TCH II Pledge Pool, LLC – the Special Limited Partner.

All of the partners of Kettering Square are parties to this suit.

**Answer**: Defendants admit the allegations of Paragraph 65.

66. Earlier this year, partnership audits revealed that Kettering LLC had collected and/or caused Kettering Square to pay Kettering LLC and its affiliate, Ten South, amounts to which they were not entitled, including unpermitted loans to the General Partner and/or its affiliates totaling $342,886; accrued partnership management fees totaling $27,163; excess management fees totaling $87,591; and a bank draft liability charged to the Partnership totaling $8,342.

**Answer**: Defendants deny the allegations of Paragraph 66.

67. The defendants' misappropriation of such amounts from the Partnership reflects severe mismanagement of the Partnership and the project and has resulted in reduced Partnership

cash flow to the detriment of the plaintiffs, and further threatens the viability of the plaintiffs' investments in the Partnership and the project.

**Answer**:    Defendants deny the allegations of Paragraph 67.

68.    By letter dated March 30, 2015, the AMTAX Entities notified Kettering LLC of these defaults under the Partnership Agreement and demanded that it cure the defaults. It did not do so. So, by letter dated May 18, 2015, the AMTAX Entities followed up on the uncured defaults and demanded that Kettering LLC cease and desist from continuing to take and pay unauthorized fees and monies from the Partnership, failure of which would result in a demand for Ten South's immediate removal as the Partnership's Management Agent.

**Answer**:    Defendants admit that in a series of letters dated March 30, 2015, and May 18, 2015, HCP Pacific Asset Management, purporting to speak on behalf of the Limited Partners, asserted alleged defaults by the General Partners. Further answering, Defendants state that those letters are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith. Defendants deny the remaining allegations of Paragraph 68.

69.    While Kettering LLC ultimately – but untimely – paid some of the amounts due to the Limited Partners of the Partnership, it never fully repaid or cured its prior defaults. Moreover, it continued to collect and/or make improper payments of Partnership monies, and it did not remove its affiliate as the Management Agent.

**Answer**:    Defendants admit that the Limited Partners received certain payments. Defendants deny the remaining allegations of Paragraph 69.

70.    Among other things, as of July 2015, when the AMTAX Entities most recently reviewed these issues with Mr. Canel, Kettering LLC had paid to itself and/or its affiliate improper amounts and fees totaling over $650,000, including, as of July 2015. $145,610 in improper

bookkeeping fees; $49,052 in improper TRACS fees; and $342,886 in unpermitted loans to the General Partner and/or its affiliates; and $13,000 in other debits of Partnership funds to which it was not entitled.

**Answer**: Defendants deny the allegations of Paragraph 70.

71. In addition, Kettering LLC has expressly refused to remove and replace its complicit affiliate, Ten South, as the Management Agent.

**Answer**: Defendants admit that Kettering, LLC has refused to replace Ten South as the management agent for the property. Defendants deny the remaining allegations of Paragraph 71.

72. By letter dated October 1, 2015, the AMTAX Entities gratuitously provided Kettering LLC one last opportunity to cure its prior defaults and remove and replace the Management Agent. It did not do so, and, in fact, refused to do so, and expressly advised the Investor Limited Partner that it would continue to take the unauthorized fees and monies from the Partnership.

**Answer**: Defendants admit that in a series of letters dated October 1, 2015, a lawyer purporting to represent the purported representative of the Limited Partners asserted alleged defaults by the General Partners. Further answering, Defendants state that those letters are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith. Defendants deny the remaining allegations of Paragraph 72.

*F.* *The Defendants' Intention to Continue Misappropriating Partnership Funds*

73. The Canel Entities have repeatedly failed and/or refused to cure their multiple defaults of the Partnership Agreements and breaches of their fiduciary duties.

**Answer**: Defendants deny the allegations of Paragraph 73.

74.     As noted above, by letter dated March 30, 2015, the AMTAX Entities advised the Canel Entities of their multiple defaults under the Partnership Agreements and demanded that they cure those defaults. They did not do so.

**Answer**:     Defendants admit that in a letter dated March 30, 2015, HCP Pacific Asset Management, purporting to speak on behalf of the Limited Partners, asserted alleged defaults by the General Partners. Further answering, Defendants state that those letters are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith. Defendants deny the remaining allegations of Paragraph 74.

75.     By letter dated May 18, 2015, the AMTAX Entities followed up on the Canel Entities' uncured defaults and notified them of additional, continuing defaults.

**Answer**:     Defendants admit that in a letter dated May 18, 2015, HCP Pacific Asset Management, purporting to speak on behalf of the Limited Partners, asserted alleged defaults by the General Partners. Further answering, Defendants state that those letters are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith. Defendants deny the remaining allegations of Paragraph 75.

76.     While the Canel Entities eventually – but untimely – paid some of the amounts due to the Limited Partners, they never fully repaid or cured their prior defaults. And, they continued to take and/or pay out Partnership funds at their whim. They also refused to remove and replace their complicit affiliate as the Partnerships' Management Agent.

**Answer**:     Defendants admit that the Limited Partners received certain payments. Defendants admit that the General Partners of the Partnerships have refused to replace Ten South as the management agent for the properties.  Defendants deny the remaining allegations of Paragraph 76.

77.     The AMTAX Entities repeatedly warned the Canel Entities of their defaults and misappropriations of Partnership assets and demanded that they cure them, but they did not.

**Answer**:     Defendants deny the allegations of Paragraph 77.

78.     After months of the Canel Entities' failures to cure their prior defaults and honor their fiduciary obligations, and their continued taking of Partnership monies, the AMTAX Entities, by letter dated October 1, 2015, allowed the Canel Entities one last opportunity to cure their prior defaults and remove their affiliate as the Management Agent. Even then, the Canel Entities did not do so, and, in fact, refused to do so.

**Answer**:     Defendants admit that in a series of letters dated October 1, 2015, a lawyer purporting to represent the purported representative of the Limited Partners asserted alleged defaults by the General Partners. Further answering, Defendants state that those letters are themselves the best evidence of their content, and Defendants deny any allegations inconsistent therewith. Defendants deny the remaining allegations of Paragraph 78.

79.     Not only have the Canel Entities refused to cure their prior defaults and remove their affiliate as the Management agent, in their response to the AMTAX Entities' October 1, 2015, letter they advised the AMTAX Entities that they do not intend to stop and will continue to take loans and advances from the Partnerships and pay themselves and their affiliate manager the management, bookkeeping, and TRACS fees at issue – even though the Partnership Agreements and the Management Agreements between the parties expressly prohibit the payments.

**Answer**:     Defendants admit that counsel for the General Partners wrote a letter dated October 1, 2015, advising that the General Partners were not in default of any of their obligations. Further answering, Defendants state that the letter itself is the best evidence of its content, and Defendants

deny any allegations inconsistent therewith. Defendants deny the remaining allegations of Paragraph 79.

80.     Only last week, the AMTAX Entities learned that the Canel Entities took yet another $106,000 from the Partnerships in unauthorized advances during the months of August and September alone, and paid themselves and/or their affiliate manager another $14,411 in additional, unauthorized management, bookkeeping, and TRACS fees during those months.

**Answer**:     Defendants deny the allegations of Paragraph 80.

81.     The defendants' purposeful, continued breaches of the agreements between the parties and their fiduciary duties make removal of the Canel Entities as the General Partners of the Partnerships, and Ten South as the Management Agent, the only reasonable option for the AMTAX Entities.

**Answer**:     Defendants deny the allegations of Paragraph 81.

## V.     CAUSES OF ACTION

### COUNT I – *The Canel Entities' Breaches of the Partnership Agreements*

82.     The plaintiffs re-allege, re-aver, and reincorporate by reference all facts and conduct set forth in the foregoing Paragraphs 1 – 81 of the Complaint as if repeated herein.

**Answer**:     Defendants reallege and incorporate herein by reference their answers to Paragraphs 1 through 81 above as their answer to this Paragraph 82.

83.     The Canel Entities, through their actions and omissions, materially breached their obligations to the plaintiffs under the Partnership Agreements.

**Answer**:     Defendants deny the allegations of Paragraph 83.

84.     The Canel Entities breached the Partnership Agreements by, among other things, improperly paying themselves and/or causing the Partnership to pay the Canel Entities and/or their

affiliates fees and amounts to which they were and are not entitled, including unpermitted loans of partnership funds, accrued partnership management fees that should not have been paid, improper bookkeeping and TRACS fees, and other amounts to which they were not entitled; failing and refusing to remove their affiliate as the Management Agent; and, in two cases, failing to maintain the occupancy levels and debt coverages required by the Partnership Agreements.

**Answer**:      Defendants deny the allegations of Paragraph 84.

85.      The Canel Entities' misconduct and breaches of the Partnership Agreements have resulted in direct and proximate damages to the plaintiffs, including, without limitation, lost distributions of cash flow occasioned by the Canel Entities' improper payments and/or collection of Partnership funds. The plaintiffs are entitled to recover all damages to which they are entitled under the law for the Canel Entities' breaches of the Partnership Agreements, including damages foreseeable and unforeseeable.

**Answer**:      Defendants deny the allegations of Paragraph 85.

*COUNT II – *<u>*The Canel Entities' Breaches of Fiduciary Duty*</u>

86.      The plaintiffs re-allege, re-aver, and reincorporate by reference all facts and conduct set forth in the foregoing Paragraphs 1 – 85 of the Complaint as if repeated herein.

**Answer**:      Defendants reallege and incorporate herein by reference their answers to Paragraphs 1 through 85 above as their answer to this Paragraph 86.

87.      The Canel Entities owed the plaintiffs a duty of loyalty pursuant to the Partnership Agreements and the law.

**Answer**:      Defendants admit the allegations of Paragraph 87.

88. The Canel Entities materially breached their fiduciary duties to the plaintiffs when they improperly paid themselves and their affiliates fees and amounts to which they were not entitled and refused to remove their affiliate as the Management Agent of the Partnerships.

**Answer**: Defendants deny the allegations of Paragraph 88.

89. All of the Canel Entities' breaches, as set forth above, caused the plaintiffs to suffer damages.

**Answer**: Defendants deny the allegations of Paragraph 89.

90. The Canel Entities are liable to the plaintiffs for the damages suffered by them as a result of the Canel Entities' breaches of their fiduciary duty.

**Answer**: Defendants deny the allegations of Paragraph 90.

Count III – *Declaratory Relief Against the Canel Entities*

91. The plaintiffs re-allege, re-aver, and reincorporate by reference all facts and conduct set forth in the foregoing Paragraphs 1 – 90 of the Complaint as if repeated herein.

**Answer**: Defendants reallege and incorporate herein by reference their answers to Paragraphs 1 through 90 above as their answer to this Paragraph 91.

92. The Canel Entities were in breach of the Partnership Agreements based on the enumerated violations and failure to timely cure. Under the Partnership Agreements, a violation of the Partnership Agreements permits the AMTAX Entities as Investor Limited Partners to remove the Canel Entities as the General Partners of the Partnerships.

**Answer**: Defendants deny the allegations of Paragraph 92.

93. All prerequisites for removal of the Canel Entities as the General Partners of the Partnerships have been met under the Partnership Agreements, but the Canel Entities deny that grounds for removal exist. Moreover, they have stated that they intend to continue their pattern of

misconduct and the multiple breaches identified in this Complaint. Accordingly, a real and justiciable controversy exists and is ripe for determination by this Court.

**Answer**:      Defendants admit that a justiciable controversy exists. Defendants deny the remaining allegations of Paragraph 93.

94.      Based on the aforementioned terms of the Partnership Agreements, the Canel Entities' violations of the Partnership Agreements, the facts as alleged, and pursuant to 28 U.S.C. § 2201, the plaintiffs are entitled to a declaration that the AMTAX Entities have the have the right to remove the Canel Entities as the General Partners of the Partnerships upon written notice.

**Answer**:      Defendants deny the allegations of Paragraph 94.

*COUNT IV – <u>Tortious Interference with a Contract by Scott Canel and Ten South</u>*

95.      The plaintiffs re-allege, re-aver, and reincorporate by reference all facts and conduct set forth in the foregoing Paragraphs 1 – 94 of the Complaint as if repeated herein.

**Answer**:      Defendants reallege and incorporate herein by reference their answers to Paragraphs 1 through 94 above as their answer to this Paragraph 95.

96.      Ten South is the Management Agent for each of the Partnerships.

**Answer**:      Defendants admit the allegations of Paragraph 96.

97.      At all times pertinent to this suit, there have been contracts and legally protected interests that existed between the plaintiffs and the Canel Entities, namely the Partnership Agreements.

**Answer**:      Defendants admit the existence of the Partnership Agreements. Further answering, Defendants state that those agreements themselves are the best evidence of their content and they deny any allegations inconsistent therewith.   Defendants deny the remaining allegations of Paragraph 97.

98.     Mr. Canel and Ten South are and were aware of the contracts and legally protected interest between the plaintiffs and the Canel Entities.

**Answer**:     Defendants admit the Canel and Ten South are generally aware of the terms of the Partnership Agreements. Defendants deny the remaining allegations of Paragraph 98.

99.     Mr. Canel and Ten South intentionally and without justification caused, induced, and/or assisted in procuring breaches of the Partnership Agreements by the Canel Entities by, among other things, intentionally collecting and/or causing the Partnerships to pay amounts and fees to the Canel Entities and their affiliates to which they were not entitled and, in the case of Mr. Canel, refusing to remove Ten South as the Management Agent of the Partnerships.

**Answer**:     Defendants deny the allegations of Paragraph 99.

100.     By authorizing and/or facilitating the actions referenced in the preceding paragraphs, Mr. Canel and Ten South have caused the Canel Entities to breach the Partnership Agreements.

**Answer**:     Defendants deny the allegations of Paragraph 100.

101.     There is no justification or privilege for the conduct of Mr. Canel or Ten South.

**Answer**:     Defendants deny the allegations of Paragraph 101.

102.     The conduct of Mr. Canel and Ten South has caused damages to the plaintiffs by breach of the Partnership Agreements. Such conduct constitutes tortious interference with a contract under Ohio law, and Mr. Canel and Ten South are liable for all resulting damages suffered by the plaintiffs.

**Answer**:     Defendants deny the allegations of Paragraph 102.

103.     The plaintiffs reserve the right to amend and supplement their Complaint as discovery and their investigation of this matter progresses, including without limitation, the right

to amend their Complaint to request an order of sequestration of Partnership assets and appoint a receiver.

**Answer**:        Paragraph 103 contains no allegations that require an answer. Defendants deny that Plaintiffs are entitled to any remedy since there has been no breach of any duty to Plaintiffs.

## AFFIRMATIVE DEFENSES

1.    Each of the Plaintiff Limited Partners has received since the inception of the Partnerships periodic internal financial statements and annual audited financial statements which describe all receipts and disbursements of funds, including a description of the transactions of which they now complain.

2.  The Partnerships' financial statements expressly identified the payment of bookkeeping and TRACS fees to the management companies since the inception of the Partnerships.

3.  The Partnerships' financial statements expressly identified all payments made to any entity affiliated with the General Partners.

4.  Until 2015, none of the Limited Partners complained about any of the affiliated party payments.

### First Affirmative Defense

5. By their inaction for more than ten years, Plaintiffs have waived or are estopped from asserting any objection to any payments to any entity affiliated with the General Partners.

### Second Affirmative Defense

6. By their inaction for more than ten years, all of Plaintiffs' claims are barred by the applicable statute of limitations.

### Third Affirmative Defense

7. By their inaction for more than ten years, all of Plaintiffs' claims are barred by the doctrine of laches.

## COUNTERCLAIM FOR DECLARATORY JUDGMENT AND DAMAGES

1. Counter-Plaintiff Amberly, LLC is the General Partner of Amberly Apartments, LP, an Ohio limited partnership. Amberly Apartments, LP owns a multi-family rental housing development in Columbus, Ohio. AMTAX Holdings 204, LLC is the Investor Limited Partner, and TCH II Pledge Pool, LLC is the Special Limited Partner.

2. Counter-Plaintiff Ashwood, LLC is the General Partner of Ashwood Apartments, LP, an Ohio limited partnership. Ashwood Apartments, LP owns a multi-family rental housing development in Cincinnati, Ohio. AMTAX Holdings 265, LLC is the Investor Limited Partner, and TCH II Pledge Pool, LLC is the Special Limited Partner.

3. Counter-Plaintiff Eastpointe I, LLC is the General Partner of Eastpointe Apartments, LP, an Ohio limited partnership. Eastpointe Apartments, LP owns a multi-family rental housing development in Norwood, Ohio. AMTAX Holdings 205, LLC is the Investor Limited Partner, and Tax Credit Holdings III, LLC is the Special Limited Partner.

4. Counter-Plaintiff Kettering, LLC is the General Partner of Kettering Apartments, LP, an Ohio limited partnership. Kettering Apartments, LP owns a multi-family rental housing development in Dayton, Ohio. AMTAX Holdings 206, LLC is the Investor Limited Partner; and TCH II Pledge Pool, LLC is the Special Limited Partner.

5. Each Partnership was formed in 2002. Since their inception, each General Partner has acted as the general partner for each partnership. Each property was initially managed by an unaffiliated property manager known as First Merit Realty Services, Inc. Since about March 2003, each property has been managed by Ten South Management Company, LLC ("Ten South"), which is affiliated with the General Partners. Affiliates of the General Partners accrued fees to which they were due and have advanced significant funds to these partnerships, all of which were disclosed in the audited financial statements.

6. Since their inception, each Partnership has retained an accounting firm to audit the books and records of the Partnership. Each year since its inception an independent auditor has prepared reports which include balance sheets, statements of operations, statements of partners' equity, cash flow statements, and footnotes describing all related-party transactions. These audit reports were provided to the Investor Limited Partners and Special Limited Partners each year.

7. Upon information and belief, a controlling interest in the Investor Limited Partners and the Special Limited Partners in each of the limited partnerships described above has changed over the years. Also upon information and belief, in April 2015 an affiliate of Alden Pacific Asset Management, LLC, HCP Pacific Asset Management, LLC, acquired a controlling interest in the Investor Limited Partners and the Special Limited Partners in each of the limited partnerships described above. Alden Pacific Asset Management, LLC, has described itself as a successor to HCP Pacific Asset Management, LLC.

8. On March 30, 2015, and May 18, 2015, HCP Pacific Management, LLC, sent letters to each of the Counter-Plaintiffs asserting that Counter-Plaintiffs had committed certain defaults under the limited partnership agreements.

9. This was the first time that any of the Investor Limited Partners or Special Limited Partners in any of the limited partnerships asserted that Counter-Plaintiffs had committed any acts that constituted a default of their obligations as General Partners.

10. Counter-Plaintiffs denied and continue to deny that they committed any acts of default.

11. The dispute in March involved accounting issues dating back to 2007. These issues would not have arisen had the Limited Partners voiced any concerns when they received the audits as they were prepared each year, and these issues would not have arisen had the Limited Partners submitted timely bills for the amounts they asserted they were owed. Nevertheless, an affiliate of the General Partners agreed to pay certain sums to the Limited Partners in an effort to resolve the disputes and did so in April 2015.

13. The Limited Partners were paid Asset Management Fees based on annual invoices they submitted. Those invoices over the course of several years overstated the amount of Asset Management Fees to which the Limited Partners were entitled. The Limited Partners were paid those improper amounts based on their incorrect invoices.

14. Following receipt of certain funds in April 2015, the Limited Partners asserted that the alleged defaults were not cured because the payments did not include interest. Contrary to the assertion of the Limited Partners, no interest was owed to them. The Limited Partners also asserted through their representative that the Limited Partners had the right to demand that the General Partners remove the management agents on the properties.

15. Counsel for the General Partners wrote to counsel for the representative of the Limited Partners on May 21, 2015, explaining that no event of default had occurred, and explaining that the Limited Partners had no right to direct who the management agents of the properties were to be.

16. The Limited Partners did not respond to this letter.

17. On October 1, 2015, counsel for Alden Pacific Asset Management, LLC, sent a letter to each of the Counter-Plaintiffs identifying Alden Pacific Asset Management, LLC, as the authorized representative of the Limited Partners of each of the limited partnerships described above.

18. In each of those letters, Alden Pacific Asset Management, LLC, asserts that Counter-Plaintiffs are in default of their obligations as General Partners in each of the limited partnerships. The letters further state that the Limited Partners demand that Counter-Plaintiffs agree to several conditions in order for the Limited Partners "to permit" Counter-Plaintiffs to continue serving as the General Partners of the limited partnerships.

19. The Limited Partners have asserted that the Counter-Plaintiff General Partners have breached their obligations by allowing the Partnerships to pay to the management agent bookkeeping fees and related fees. To the contrary, those fees are reasonable and necessary, have been approved by HUD, and it is within the General Partners' express authority to authorize those services and the payment for those services.

20. These fees have been paid by each Partnership since their inception in 2002, and have been fully disclosed in the audited financial statements every year since then. These fees were paid to the initial management company, First Merit Realty Services, Inc., beginning in 2002. That management company was expressly approved by the Limited Partners and had no affiliation with the General Partner. Again, the audited financial statements fully disclosed these fees each year.

21. The first time any Limited Partner voiced any objection to bookkeeping fees and related fees was in 2015.

22. One of the conditions set forth in the October 1, 2015, letters is that the General Partners remove the management agents on each property.

23. There is no good reason why the General Partners would terminate the management agents.

24. There is also no good reason why the Limited Partners would demand that the General Partners remove the management agents. After payment of project expenses, the cash flow is distributed entirely to the General Partners and its affiliates to the extent they have advanced money to the Partnerships, and then 80% or more of any remaining cash flow belongs to the General Partners. Because the General Partners have advanced significant funds to these partnerships, the General Partners have by far the greatest economic interest in the proper management of the partnerships.

25. The Counter-Plaintiff General Partners are not and have not been in default of any of their obligations as General Partners in the limited partnerships.

26. The Limited Partners have waived any objection to any action taken or action not taken by the General Partners by failing to object to those actions or that inaction for more than ten years.

27. The Limited Partners are estopped from asserting that any action taken or action not taken by the General Partners constitutes an event of default by failing to object to those actions or that inaction for more than ten years.

28. The Limited Partners have no right to demand that the General Partners be replaced as general partners of the Partnerships.

29. The Limited Partners have no right to demand that the General Partners replace the management agent on any of the properties.

30. The Limited Partners have no right to manage the partnerships, including but not limited to demanding that the General Partners take certain actions such as replacing the management agent or determining what fees and expenses are reasonable for the Partnerships to incur.

31. The Limited Partners have been overpaid Asset Management Fees and should be required to repay those amounts.

32. A real and justiciable controversy exists and is ripe for determination by this Court.

For these reasons, Counter-Plaintiffs respectfully request that this Court enter judgment in their favor and against each of the Counter-Defendants (1) declaring that Counter-Plaintiffs are not in default of any of their obligations to the Partnerships or to the Limited Partners; (2) declaring that Counter-Defendants have no right to cause Counter-Plaintiffs to be removed as General Partners; (3) declaring that Counter-Plaintiffs are not obligated to replace the management agents on any of the properties; (4) requiring the Counter-Defendant Investor Limited Partners to repay excessive Asset Management Fees they have received; (5) awarding disgorgement relief; (7) awarding Counter-Plaintiffs their costs and attorneys' fees; and (8) providing any other relief the Court deems just.

By counsel:

**Scott I. Canel, Amberly, LLC, Ashwood, LLC, Eastpointe I, LLC, Kettering, LLC, and Ten South Management Company, LLC,**

*/s/Harold F. Salsbery*

Harold F. Salsbery- (Ohio bar # 0080119)
**BAILEY &WYANT, PLLC**
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
Telephone: (304) 345-4222
Facsimile: (304) 343-3133
Email: tsalsbery@baileywyant.com

and

Peter M. King (IL Bar#6183270)
William H. Jones (IL Bar#6201398)
**CANEL, KING & JONES**
70 West Madison Street, Suite 3970
Chicago, Illinois 60602
Telephone: 312-372-4142
Facsimile: 312-372-6737
Email:  pking@kingjoneslaw.com
          wjones@kingjoneslaw.com
*Pro Hac Vice Motions Pending*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **AMTAX HOLDINGS 204, LLC,** | ) | |
| **AMTAX HOLDINGS 265, LLC,** | ) | |
| **AMTAX HOLDINGS 205, LLC,** | ) | |
| **AMTAX HOLDINGS 206, LLC,** | ) | |
| **TCH II PLEDGE POOL, LLC, and** | ) | |
| **TAX CREDIT HOLDINGS III, LLC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO: 1:15-cv-723** |
| | ) | |
| **SCOTT I. CANEL, AMBERLY, LLC,** | ) | |
| **ASHWOOD, LLC, EASTPOINTE I, LLC** | ) | |
| **KETTERING, LLC, and TEN SOUTH** | ) | **JURY DEMANDED** |
| **MANAGEMENT COMPANY, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of foregoing **" DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM TO PLAINTIFFS' COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES"** was served upon the following parties on this day, January 5, 2016:

Joseph E. Greiner
Dinsmore & Shohl
225 East Fifth Street, Suite 1900
Cincinnati, OH 45202
*Counsel for Amtax Holdings 204, LLC; Amtax Holdings 265, LLC; Amtax Holdings 205, LLC; Amtax Holdings 206, LLC; TCH II Pledge Pool, LLC; Tax Credit Holdings III, LLC*

Laura E. Carlisle
Steven F. Griffith, Jr.
Baker Donelson
201 St. Charles Ave., Suite 3600
New Orleans, LA 70170
*Counsel for Amtax Holdings 204, LLC; Amtax Holdings 265, LLC; Amtax Holdings 205, LLC; Amtax Holdings 206, LLC; TCH II Pledge Pool, LLC; Tax Credit Holdings III, LLC*

W. Patton Hahn
Baker Donelson
420 20th St. North
Wells Fargo Tower, Suite 1600
Birmingham, AL 35203
*Counsel for Amtax Holdings 204, LLC; Amtax Holdings 265, LLC; Amtax Holdings 205, LLC;*
*Amtax Holdings 206, LLC; TCH II Pledge Pool, LLC; Tax Credit Holdings III, LLC*

Robert Martin Zimmerman
Dinsmore & Shohl
1900 First Financial Center
225 E. 5th Street
Cincinnati, OH 45202
*Counsel for Amtax Holdings 204, LLC; Amtax Holdings 265, LLC; Amtax Holdings 205, LLC;*
*Amtax Holdings 206, LLC; TCH II Pledge Pool, LLC; Tax Credit Holdings III, LLC*

*/s/Harold F. Salsbery*
Harold F. Salsbery- (Ohio bar # 0080119)
**BAILEY &WYANT, PLLC**
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia 25337-3710
Telephone: (304) 345-4222
Facsimile: (304) 343-3133
Email: tsalsbery@baileywyant.com